❏ Original       ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No. 23-835M(NJ) |
| Information about the location of the cellular telephone | ) |
| assigned call number (213) 886-0344 ("Target Cell Phone"), | ) |
| whose service provider is T-Mobile, as further described in | ) |
| Attachment A | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 2/1/2023 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of _____ 03/18/2023 _____ .

Date and time issued: 1/18/2023 @ 12:46 p.m.   _____
*Judge's signature*

City and state:   Milwaukee, Wisconsin   _____
Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned call number **(213) 886-0344** (referred to herein and in Attachment B as "**Target Cell Phone**"), subscribed to Joathan COLULA Supply And Demand Group at 2398 Woods Avenue, Monterey Park, CA, that is in the custody or control of T-Mobile, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.      The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the

possession, custody, or control of the Provider, including any information that has been

deleted but is still available to the Provider or that has been preserved pursuant to a

request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the

government the following information pertaining to the Account listed in Attachment

A:

    a.    The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period January 7, 2023, to the present:

        i.    Names (including subscriber names, user names, and screen names);

        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.    Local and long-distance telephone connection records;

        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.    Length of service (including start date) and types of service utilized;

        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period January 7, 2023, to the present including:

a.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

b.    information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.    Information associated with each communication to and from the Target Cell Phone for a period of **30** days from the date of this warrant, including:

i.    Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.    Source and destination telephone numbers;

iii.   Date, time, and duration of communication; and

iv.    All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT,

True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.  Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

    i.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii.  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.  Information to be Seized by the Government

All information described above in Section I that will assist in arresting Joathan COLULA, who was charged with violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 1956(h) and 2(a). COLULA is the subject of arrest warrants issued on November 23, 2022, and December 13, 2022, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information about the location of the cellular telephone assigned<br>call number (213) 886-0344 ("Target Cell Phone"), whose service<br>provider is T-Mobile, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.23-835M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❏ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); 846; 18 U.S.C. §§ 1956 (h) & 2(a) | Distribution and Possession with Intent to Distribute Controlled Substances; Conspiracy to Possess with Intent to Distribute Controlled Substances; Money laundering, & Aiding and Abetting. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __60__ days *(give exact ending date if more than 30 days:* __03/18/2023__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JEREMY S DORN    Digitally signed by JEREMY S DORN
Date: 2023.01.17 12:58:14 -06'00'

*Applicant's signature*

HSI SA Jeremy Dorn

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 1/18/2023

*Judge's signature*

City and state:   Milwaukee, Wisconsin     Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Jeremy Dorn, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(213) 886-0344** ("**Target Cell Phone**"), which is subscribed to Joathan COLULA Supply And Demand Group at 2398 Woods Avenue, Monterey Park, California, known to be used by Joathan COLULA, and whose service provider is T-Mobile US, Inc. (T-Mobile), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.   *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.     I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations (HSI), assigned to the Resident Agent in Charge (RAC) Milwaukee, Wisconsin.  I have been a federal law enforcement agent for

2

over ten years. I have received basic criminal investigative training, including thirty-six weeks at the Federal Law Enforcement Training Center (FLETC). In the course of my work, I have become knowledgeable in the enforcement of federal laws pertaining to narcotics and dangerous drugs. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4.      I have participated in drug trafficking investigations conducted by HSI, the Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), the United States Postal Service (USPS), and other law enforcement agencies, which resulted in the arrest of subjects, and the seizure of property, assets, and controlled substances. I am currently a member of the North Central High Intensity Drug Trafficking Area (HIDTA) Task Force assigned to the opioid initiative as an investigator specializing in the smuggling, trafficking, and distribution of dangerous and controlled substances. I am familiar with various methods of smuggling and trafficking narcotics and other controlled substances and the proceeds from sale of such substances. I am also familiar with methods used to evade detection of both the controlled substances and the proceeds from their sale that are used by drug traffickers.

5.      In addition to my experience in the investigation of individuals involved in federal criminal offenses, I also have knowledge and experience in the apprehension and prosecution of individuals involved in federal criminal offenses. I am familiar with and have experience in the use of cellular devices used to commit those offenses as well

3

as the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their locations.

7.      The facts in this affidavit come from case agents' observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my or case agents' knowledge about this matter.

8.      Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

9.      Joathan COLULA (DOB xx/xx/1992) is the subject of an arrest warrant issued on November 23, 2022. *See United States of America v. Joathan Colula*, 22-1852M(NJ). Additionally, on December 13, 2022, COLULA was indicted by a grand jury in the Eastern District of Wisconsin, and an arrest warrant was issued upon formal charges. *See United States of America v. Joathan Colula et al.*, Case No. 22-CR-26. Therefore, COLULA is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4). Based on the facts set forth in this Affidavit, there is probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting COLULA.

10.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is

a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

11.    In January 2022, members of the North Central High Intensity Drug Trafficking Area (HIDTA), the Drug Enforcement Administration (DEA), Homeland Security Investigations (HSI), and the Internal Revenue Service (IRS) initiated an investigation into individuals distributing large quantities of methamphetamine, heroin, fentanyl, cocaine, and marijuana throughout Milwaukee, Wisconsin, and elsewhere. Law enforcement officers identified the leader of the drug trafficking organization (DTO) as Phillip DANIELS SR., a/k/a "Dr. Phil" (DANIELS), who has established distribution locations in Milwaukee, Wisconsin; St. Paul/Minneapolis, Minnesota; and Chicago, Illinois.

12.    The investigation to date revealed that COLULA supplied the DTO with controlled substances and that COLULA operated out of California. COLULA received cashier's checks from DANIELS and cash deposits from other DTO members. Case agents believe these payments were for controlled substances. Furthermore, during the course of this investigation, DANIELS also sent luggage, believed to contain U.S. currency, on flights to California, and COLULA was identified picking up the luggage on at least one occasion. Case agents further learned that DANIELS deposited cashier's checks and U.S. currency into Deonte EDWARDS' business bank account, which EDWARDS subsequently withdrew and gave to various DTO suppliers, including COLULA, as payment for controlled substances.

5

**DTO Parcels**

13.     Between approximately October 7, 2021, through November 11, 2022, at least forty-five parcels suspected to contain controlled substances have been delivered from California to addresses associated with the DTO. These parcels have been identified as being associated with the DTO because the parcels have been traced to the same group of senders, and the listed recipients are often identified DTO members, to include DANIELS, Joelle MASSEY, Christopher DANIELS, Michelle HAUCK, or a few select other names believed to be nominee names.

**January 2022, Seizure of Methamphetamine and Marijuana – Wisconsin**

14.     On January 5, 2022, the residence located at 8708 N. Deerwood Drive, Brown Deer, Wisconsin, which was later determined to be associated with DANIELS, was searched pursuant to a federal search warrant after the U.S. Marshal Service arrived to execute a fugitive arrest warrant for someone wanted on state cocaine distribution charges and saw contraband in plain view. MASSEY, believed to be in a long-term dating relationship with DANIELS, was home at the time. MASSEY was permitted to call DANIELS, during which call they discussed whether officers would take the money in the residence. MASSEY was later arrested.

15.     Evidence seized during the search of this residence included, among other items, approximately 1,910 grams of methamphetamine, 2,767 grams of marijuana, digital scales, $45,448 in U.S. currency, and documents that included two cashier's checks ($7,850 and $15,300) dated December 2021, drawn from DANIELS' Wells Fargo account to COLULA.

6

**March 2022, Seizure of Cocaine - Minnesota**

16.     On or about March 3, 2022, case agents intercepted a 13-pound package sent to DTO member Ramona FRYER's address in St. Paul, Minnesota. Specifically, the package was addressed to "K-Maree #E 234 Bates Ave Saint Paul, MN 55106-5543." The package was shipped from "DXG Technologies 1001 S Lawson St City of Industry, CA 91748." The parcel was shipped from the UPS store located at 912 E. 12th Street Room B, Los Angeles, California.  On March 4, 2022, case agents searched this package pursuant to a federal search warrant.  Located within the package was a white plastic dog food container with a screw off lid, inside of which contained two plastic bags of suspected narcotics among packaging items to include packing peanuts and expandable foam. A small sample of each suspected kilogram field tested positive for the presence of cocaine. The total amount of cocaine seized was approximately 3,425 grams (1,135 grams, 1,145 grams, and 1,145 grams).

17.     Examination of financial information revealed that on February 23, 2022, Leroy HENTON made a cash deposit of $31,000 into a Wells Fargo account ending in x0363 affiliated with COLULA. Additionally, Ramona FRYER made a cash deposit of $76,000 into COLULA's same account on the same day but from a different state as Leroy HENTON. Based on my training and experience, I know that there is normally a delivery cost associated with the shipment of cocaine, and that a kilogram of cocaine would be approximately $25,000-$30,000. I further believe that the deposit amounts correspond to the approximately 3 kilograms of cocaine seized on March 3, 2022.

**Confidential Source Information**

18.     In early 2021, DEA and the Bureau of Criminal Apprehension in Minneapolis/St. Paul, Minnesota, were conducting a drug trafficking investigation in which approximately five pounds of methamphetamine, paraphernalia consistent with kilogram level distribution, and U.S. currency were seized from an individual later identified as CS 1.

19.     Beginning in November 2021, law enforcement conducted an interview of CS 1. CS 1 stated that CS 1 has known "Dr. Phil" since approximately September 2020. CS 1 identified DANIELS by photograph as "Dr. Phil." CS 1 stated that CS 1 sold multiple kilograms of cocaine, heroin, and methamphetamine for DANIELS and HENTON from approximately September 2020 to January 2021, in the Saint Paul/Minneapolis area. According to CS 1, the narcotics were shipped to Minnesota, and a typical shipment would contain six kilograms of cocaine, six kilograms of heroin, and approximately thirty pounds of methamphetamine.

20.     CS 1 indicated that DANIELS traveled via a commercial airline multiple times a month to see if people were ready for more controlled substances, i.e., resupply and/or collect money from his various runners who assisted the DTO. CS 1 stated that DANIELS took these flights with U.S. currency inside of his luggage. CS 1 stated that DANIELS also set up numerous LLCs, which DANIELS uses to get loans to move money. CS 1 indicated that DANIELS directed CS 1 to sell the narcotics, and DANIELS picked up the money at a later date. CS 1 indicated that if DANIELS did not pick up the money, CS 1 deposited drug proceeds into a Chase bank account under one of

8

DANIELS' LLCs associated with a health care business, possibly "First Responsive Supportive Care." CS 1 provided a phone number for DANIELS in which CS 1 would call when more product was needed or if the money was ready for pick up. Officers were able to verify the phone number CS 1 provided was an old number used by DANIELS.

21.     Beginning in November 2021, CS 1, made statements against CS 1's penal interest. CS 1 has an armed robbery conviction, two firearm convictions, and one federal narcotic trafficking conviction. CS 1 is cooperating in exchange for consideration on the federal narcotics trafficking conviction. Thus far, the information provided by CS 1 has been corroborated by information known to case agents, as well as other law enforcement officials, gathered during the course of the investigation. More specifically, CS 1's information has been corroborated by seizures of physical evidence, documentary evidence, and lawfully obtained device extractions. CS 1's information has also been corroborated by digital evidence contained on CS 1's cell phone, such as text messages, photographs, and geolocation information. Within the context of the information detailed and relied upon for purposes of this Affidavit, case agents believe CS 1 is credible and CS 1's information reliable.

### Title III Authorization

22.     15.     Between August 24, 2022, and November 3, 2022, the United States District Court for the Eastern District of Wisconsin authorized several wiretap interceptions pursuant to 18 U.S.C. § 2518 of phone numbers used by members of the DTO, including DANIELS' (213) 444-9828 (TARGET TELEPHONE 2) and (773) 948-2322 (TARGET TELEPHONE 4).

9

**COLULA Used Prior Cell Phone 1 to Further DTO Activities**

23.     During the course of this investigation, case agents determined that COLULA used 213-844-1788, or Prior Cell Phone 1, to further DTO activities. Pen register and phone toll information reflects that COLULA's main form of communication with DANIELS and EDWARDS is through an encrypted phone application, WhatsApp. Between June 30, 2022, and October 31, 2022, DANIELS, using the account associated with TARGET TELEPHONE 2, had approximately 1,732 WhatsApp communications with COLULA's WhatsApp account, Prior Cell Phone 1. Case agents believe, based upon intercepted communications and other information learned through this investigation, that DANIELS and COLULA used WhatsApp to discuss DTO-related matters.

24.     On numerous occasions as detailed below, DANIELS sent luggage to California using American Airlines but did not board the flight and travel to California. Case agents believe that DANIELS used these "ghost bags" to send bulk currency to COLULA as drug payments. On one occasion, COLULA was observed picking up the luggage from the airport in California.

25.     On April 5, 2022, at approximately 6:00 a.m. Central Standard Time (CST), the location information indicated that DANIELS' TARGET TELEPHONE 2 was in the area of the Minneapolis-Saint Paul International Airport (MSP). Case agents also learned that DANIELS purchased a plane ticket to Los Angeles International Airport (LAX), California, at this time, and that DANIELS checked in luggage. However, DANIELS' phone location data reflected that DANIELS left the airport at approximately 6:24 a.m. CST and returned to 234 Bates Avenue in St. Paul, Minnesota. DANIELS' luggage landed

10

in LAX at an estimated time of 11:30 a.m., Pacific Standard Time (PST). According to initial information obtained by American Airlines, the luggage was subsequently picked up by an Uber driver. Telephone records further indicated that COLULA, using Prior Cell Phone 1, called DANIELS' TARGET TELEPHONE 2 at approximately 12:19 p.m. and again at 12:33 p.m. PST on this day.

26.     Agents contacted LAX and spoke with a representative of TSA. TSA confirmed that x-ray images of DANIELS luggage were captured as the luggage was flagged in the system due to what was believed to be bulk currency in the luggage. Your affiant examined x-ray images and noted that the shape and size of the items depicted in the images appear to be consistent with multiple stacks of U.S. currency.

27.     Subsequently, case agents became aware of a UPS package delivered to 9905 W. Fond Du Lac Ave., Milwaukee, WI, on April 8, 2022. The UPS package was sent from a listed sender of "Y," with an address of 1360 S. Figueroa St., Los Angeles, CA, COLULA's city of residence. Case agents conducted a check of this address and noted that the sender listed the UPS store as the originating address. The parcel was mailed from the UPS store in California on April 6, 2022, a day after the suitcase arrived at the LAX airport. Based on training and experience, as well as the TSA x-ray images, telephone communications between COLULA and DANIELS, and the timing of the parcel, case agents believe that DANIELS' checked baggage was a method of smuggling drug proceeds, through American Airlines, for a drug payment to COLULA.

28.     On or about April 15, 2022, DANIELS purchased a ticket with American Airlines, flight number 1384, departing from O'Hare International Airport, Chicago,

Illinois (ORD) on April 15, 2022, at 6:32 p.m. and traveling directly to LAX. Court-authorized GPS data for DANIELS' black GMC Yukon reflected that the vehicle traveled from Milwaukee to ORD. Subpoenaed video surveillance footage and flight information from ORD reflects DANIELS checking in what was identified as a teal/light green color luggage with a black collapsible handle, to the American Airline check-in counter. Case agents confirmed that DANIELS did not travel on that flight. However, the luggage was transported on the flight to LAX. HSI investigators conducted surveillance, at case agents' request, on the aforementioned luggage at the destination baggage carousel. Case agents obtained video footage of a subject, positively identified as COLULA, at the destination baggage carousel. Investigators with HSI subsequently observed COLULA grab a green roller bag and exit the terminal. COLULA then entered the parking structure for Terminal 4. Agents observed pictures of the bag retrieved by COLULA and positively identified the bag as the same luggage checked in to American Airlines by DANIELS. Agents observed COLULA enter a gray Ford with California registration 8LRA436 (the registration did not register to the Ford vehicle). The vehicle had Uber and Lyft stickers in the upper left corner of the rear window.

29.     On July 25, 2022, DANIELS was scheduled to depart from MSP at 9:58 a.m. and travel to LAX (American Airlines flight 1270), with a layover at Phoenix Sky Harbor International Airport (PHX, flight 2311). According to location information, DANIELS' TARGET TELEPHONE 2 was located at MSP at approximately 3:45 a.m. on July 25, 2022. At approximately 4:53 a.m., video surveillance at an American Airlines check-in counter shows DANIELS checking in one piece of luggage. At approximately 5:15 a.m., location

12

information for DANIELS' phone reflected it departed MSP. On July 25, 2022, a detective assigned to the PHX Commercial Narcotic Interdiction Unit applied for, and was granted, a State of Arizona search warrant by the Superior Court of Arizona, In and For Maricopa County (search warrant number SW2022-108623), authorizing a search of the luggage sent by DANIELS. The search resulted in the seizure of $105,002. Based on WhatsApp communication records between DANIELS and COLULA around this time frame, case agents believe that the seized money was intended for COLULA as a payment for controlled substances.

**Intercepted Calls Reflect COLULA's Role**

30.      On October 7, 2022, at approximately 1:40 p.m., DANIELS, using TARGET TELEPHONE 2, called MASSEY at (414) 336-0803. During this call, DANIELS stated, "I gotta get up now. I gotta go to Chase Bank, get my stuff going." MASSEY responded, "Oh you was sleeping? You was sleeping good, huh? You're about to get out." DANIELS replied, "Oh but you know what though, that's cause a couple days in a dope roll I got up real real early." Later in the conversation, DANIELS stated, "I'm about to go...about to get myself together and then go uh...go uh uh with him and get Joe taken care of so he can take care of my business."

31.      Based on their training, experience, and knowledge of this conversation, case agents believe that during this call DANIELS informed MASSEY that he needed to go to Chase Bank ("I gotta go to Chase Bank") to electronically transfer money for COLULA ("Joe") as payment for previously fronted controlled substances or to pay for more controlled substances. On October 7, 2022, at approximately 2:12 p.m., the GPS

13

location information for DANIELS' GMC Yukon reflected that it traveled to Chase Bank at 2045 S. Robert Street, West St. Paul, Minnesota. Based on their training, experience, and knowledge of this investigation, case agents believe that DANIELS went to Chase Bank to electronically transfer U.S. currency as payment for previously fronted controlled substances or to pay for more controlled substances.

32.     On October 19, 2022, at approximately 12:53 p.m., COLULA, using Prior Cell Phone 1, called DANIELS at TARGET TELEPHONE 2. COLULA said, "Yo, what up, Phil?" Case agents were not able to understand DANIELS' response. COLULA said, "[U/I] Yea, I was out in Chicago for a couple hours. Well, all night really. From like, from like 8 to 8. For like 12 hours." DANIELS replied, "What's up?" COLULA responded, "I'm out here in New York now." DANIELS later said, "You called me yesterday. And I didn't get back to you. I see your flight got transferred." COLULA responded, "Yea, yea I'm out here in New York now. I wanted just go see what there was to do. You know? [Stammers]." DANIELS questioned, "Really?" COLULA later asked, "Um, no news with that?" DANIELS exclaimed, "Yes, Sir!" COLULA then said, "I haven't it. Cause I been, I been, I've been just you know, like, I was stuck at the uhh airport for a couple hours." DANIELS replied, "Right!" COLULA told DANIELS, "As soon as I get my room right now I'm going to sit there and see what I can figure it out." DANIELS replied, "I ain't, I ain't see nothing." COLULA responded, "Okay, cool, I'll call you back in a few." DANIELS questioned, "I mean ain't nothing what's its name, did you check it?"

14

33.     Case agents believe that during the above-referenced call, COLULA told DANIELS that he was recently in Chicago and then was in New York. Agents further believe that COLULA asked DANIELS whether DANIELS received either a parcel containing controlled substances or a delivery of controlled substances. ("Um, no news with that?") DANIELS indicated that he had not received it yet, ("Yes, Sir!"). COLULA told DANIELS that he would check on the status when he arrived at the hotel ("As soon as I get my room right now I'm going to sit there and see what I can figure it out.")

**Financial Records**

34.     COLULA obtained at least $203,000 from members of the DANIELS DTO. Agents have identified the following monetary payments to COLULA for what is believed to be controlled substances:

    a.     On September 10, 2021, Jameel BRADLEY JR. obtained a cashier's check for COLULA in the amount of $11,000.

    b.     On October 1, 2021, COLULA deposited a cashier's check from DANIELS' business bank account[1] drawn from BMO Harris for $50,000.

    c.     On October 27, 2021, MASSEY obtained a cashier's check for COLULA in the amount of $12,000.

    d.     Two cashier's checks in the amount of $7,850 and $15,300, dated December 2021, were drawn from DANIELS' Wells Fargo account to COLULA.

    e.     On February 23, 2022, two cash deposits were made into a Wells Fargo account ending in x0363 affiliated with COLULA. Leroy HENTON deposited $31,000 into COLULA's account, and FRYER deposited $76,000 into COLULA's same account.

---

[1] DANIELS and others operated a "supportive care agency," called First Response Supportive Care Agency (FRSC). DANIELS was a co-signor on a bank account in the name of (FRSC) at BMO Harris Bank.

15

**COLULA Used Prior Cell Phone 2 to Further the DTO**

35.    On November 8, 2022, the Honorable Nancy Joseph, United States Magistrate Judge for the Eastern District of Wisconsin, authorized a search warrant for the location data associated with COLULA's Prior Cell Phone 1, which he had been using since at least January 2022. *See* 22-1807M(NJ). However, due to the lack of pen and trap and trace data and E911 data, case agents determined that COLULA discontinued using Prior Cell Phone 1 around the time that the above warrant was authorized.

36.    On November 7, 2022, case agents were made aware that DANIELS and Carl JENKINS would be flying from O'Hare International Airport (Chicago, Illinois) to Los Angeles International Airport (Los Angeles, California). Case agents conducted surveillance of DANIELS and JENKINS before their flight and after they landed in Los Angeles. Upon landing in Los Angeles, DANIELS, using TARGET TELEPHONE 2, called the Prior Cell Phone 2 at 7:11 p.m. Case agents recognized the voice of the person who answered the Prior Cell Phone 2 to be COLULA based on a previous intercepted phone call between DANIELS and COLULA. COLULA stated, "Yo, what's up Phil?" DANIELS responded, "Hey, where you at?" COLULA said, "Where you at? [Stammers] I'm upstairs at the office." DANIELS replied, "You upstairs? Oh, you upstairs? [Stammers] I'm outside. [Stammers] Yea, cause we gotta go to another—we gotta go to Hertz to get me a car." COLULA responded, "Oh, gotchu, gotchu. Why what's up? They trippin' over here or what?" DANIELS asked, "You in the building?" COLULA affirmed, "Yeah, yeah, I'm going outside. I'm going outside." DANIELS stated, "Come on out. I'll be at the doors." COLULA replied, "All right; for sure."

16

37. At approximately 7:15 p.m. on November 7, 2022, California investigators observed DANIELS and JENKINS walk out of the Enterprise rental car kiosk without renting a vehicle and meet with COLULA. DANIELS, JENKINS, and COLULA then entered a white Toyota Rav4 bearing California registration plates of 8BZU972. COLULA drove DANIELS and JENKINS to the Hertz rental car kiosk at LAX, and all three went inside. After speaking with the rental car agents, DANIELS, JENKINS, and COLULA walked to a Hertz rental vehicle parking lot and got into a black Hyundai Tucson bearing California registration plates of 9AZP961. DANIELS then drove COLULA back to his Rav4, and both vehicles left separately.

38. On November 18, 2022, at 4:37 p.m., DANIELS, using TARGET TELEPHONE 2, called COLULA at Prior Cell Phone 2. During the call, DANIELS stated, "I didn't get a chance to do payroll, and I had tenant payments and mortgage payments. I was all behind, because, you know, I hadn't been to Cali in so long, man. And me going out to Cali for them days, then I came back I had already been out to Minnesota, then I had to come back and run out to Minnesota right behind it because I can't miss it." COLULA affirmed, "Yeah, yeah, yeah." DANIELS replied, "I can't miss them planes that was at, you know." COLULA confirmed, "Yeah, yeah." DANIELS stated, "You know what I mean? I was like, I can't miss that! You know what I mean? Like... you know? All those flights." COLULA responded, "That's like early Christmas."

39. Case agents believe that when DANIELS stated, "I didn't get a chance to do payroll, and I had tenant payments and mortgage payments," DANIELS was collecting money from different individuals to pay for more controlled substances from

17

COLULA. Case agents know that throughout this investigation, DANIELS has referred to parcels suspected to contain controlled substances as "flights." Based on this conversation, case agents believe that when DANIELS stated, "I can't miss them planes," that DANIELS did not want to miss the opportunity to purchase controlled substances because of non-payment.

### Arrest Operations and COLULA's use of Prior Cell Phone 3

40.     On November 23, 2022, United States Magistrate Judge Nancy Joseph of Eastern District of Wisconsin, issued a federal arrest warrant (22-1852M(NJ)) for Joathan COLULA for violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) – Distribution of and Possession with Intent to Distribute Controlled Substances; 21 U.S.C. § 846 – Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 21 U.S.C. § 843(b) – Unlawful use of Communication Facilities; 18 U.S.C. § 1956(h) – Money Laundering Conspiracy; and 18 U.S.C. § 2(a) – Aiding and Abetting the Aforementioned Offenses.  On November 29, 2022, law enforcement attempted to arrest COLULA in Los Angeles, California. However, law enforcement was not able to find COLULA to execute the federal arrest warrant.

41.     Between November 29, 2022, and December 5, 2022, law enforcement and a third party discussed COLULA self-surrendering to authorities. COLULA initially agreed to self-surrender on December 2, 2022.  COLULA did not surrender that day and communicated through the third party that he would surrender to authorities on December 5, 2022.  Yet again, COLULA did not turn himself in to authorities on that day, and he is currently a fugitive.

42.     In November 2022, case agents identified phone number (213) 726-4997, Prior Cell Phone 3, through cell phone analysis between Prior Cell Phone 1 and Prior Cell Phone 2.  On November 18, 2022, United States Magistrate Judge Nancy Joseph, Eastern District of Wisconsin, authorized a Pen Register and Trap and Trace Device (App. No. 15165) over Prior Cell Phone 3 for a period of sixty days.  Phone records for Prior Cell Phone 3 reflects that Prior Cell Phone 3 was in communication with 68 different contacts between October 12, 2022, and December 7, 2022. Of those 68 contacts, 40 were common contacts with Prior Cell Phone 1 and Prior Cell Phone 2. Of these common contacts, there were several of COLULA's family members, including his brother, Cristian Colula; his long-term girlfriend, Wendy Fraire-Valles; and his mother, Adelina Colula. Therefore, based on this call analysis, as well as the subscriber information listing to COLULA, case agents believe that COLULA was the user of Prior Cell Phone 3.

43.     On December 9, 2022, the Honorable United States Magistrate Judge William E. Duffin, for the Eastern District of Wisconsin, authorized a search warrant for the GPS/E911 information for Prior Cell Phone 3 for a period of thirty days (22-MJ-194). The aforementioned Order expired on January 7, 2023.

44.     On December 13, 2022, COLULA was charged in two counts of a Superseding Indictment, which alleged his participation in drug and money laundering conspiracies, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and 18 U.S.C. § 1956(h) and 2(a).

45.     In the early morning hours of December 13, 2022, law enforcement established surveillance based on active cellular location data over Prior Cell Phone 3 to locate and apprehend COLULA.  After several hours of surveillance, law enforcement observed a male matching the description of COLULA enter a vehicle and drive away.  Law enforcement followed the vehicle and observed the cellular location data over Prior Cell Phone 3 was consistent with the movements of the vehicle believed to be driven by COLULA. During the active surveillance, law enforcement observed the vehicle believed to be driven by COLULA speed up, slow down, and make sudden lane changes, which are common counter-surveillance measures used to expose and/or evade law enforcement.  Law enforcement requested additional assistance from the Los Angeles Police Department (LAPD) and the California Highway Patrol (CHP) to conduct a traffic stop of the vehicle believed to be driven by COLULA.  However, the vehicle made a sudden exit from the freeway.  After exiting the freeway, law enforcement lost the vehicle, which was last seen driving at a high rate of speed through a red tri-light traffic signal.  Law enforcement discontinued their attempt to conduct surveillance in the interest of public safety given the evasive and dangerous maneuvers employed by COLULA.

46.     On December 20, 2022, at approximately 4:30 a.m., law enforcement again established surveillance and tried to locate and apprehend COLULA.  Law enforcement established surveillance based on Prior Cell Phone 3's location data.    After approximately a half-hour, a female resembling COLULA's girlfriend, Wendy Fraire-Valles, was seen exiting an apartment complex and entering a vehicle. Law enforcement

suspected COLULA may have been in the vehicle driven by Fraire-Valles and marked LAPD units conducted a traffic stop of the vehicle, which did not stop for approximately 20-30 seconds. The sole occupant was indeed identified as Wendy Friare-Valles. Fraire-Valles stated she had not seen COLULA since she was pulled over by the Los Angeles Sheriff's Department (LASD) on November 29, 2022. During the traffic stop on December 20, Fraire-Valles agreed to call COLULA and request he exit the apartment and inform COLULA the complex was surrounded by law enforcement. Concurrent to the traffic stop, cellular data over Prior Cell Phone 3 was signaling in the same area as the complex that Fraire-Valles had exited. As law enforcement stood outside the complex, they observed the door to apartment 102 open and an adult male, identified as Manuel Fraire (Wendy Fraire's father), along with four children, exited the apartment. Officers made a consensual entry into apartment 102 to locate and apprehend COLULA. However, COLULA was not in the apartment.

47. At approximately 8:30 a.m., a call for service over the LAPD's radio frequency of a "trespass suspect" occurred at the same apartment complex. The comments of the call included a male, described as Hispanic, pacing in front of several apartments on the third floor, and the male did not live at the complex. Believing that the "trespass suspect" was possibly COLULA, LAPD officers were dispatched to handle the call for service. The responding officers spoke with the complainant who described the unknown male as "heavy-set," which also matches the description of COLULA. Officers showed a photograph of COLULA to the complainant who could not positively state whether the "trespass suspect" was indeed COLULA because the complainant did

21

not get a good look at the suspect's face. Officers conducted a search of the complex to no avail. At this time, the location data over Prior Cell Phone 3 signaled south towards Los Angeles. The operation was then terminated, believing COLULA had again evaded law enforcement.

**COLULA begins using the Target Cell Phone**

48.     On January 11, 2023, the Honorable United States Magistrate Judge William E. Callahan authorized a search warrant for the location data over Prior Cell Phone 3. The search warrant was served to T-Mobile that same day. On January 12, 2023, T-Mobile notified law enforcement that Prior Cell Phone 3 was no longer a viable working cell number as of January 7, 2023. Although the November 18, 2022, Pen Register Trap and Trace order (App. No. 15165) over Prior Cell Phone 3 indicated that T-Mobile must notify law enforcement of any changes to subscriber or telephone number, T-Mobile failed to do so. On January 12, 2023, at the request of law enforcement, T-Mobile provided the **Target Cell Phone** as the current number used by COLULA, which number replaced Prior Cell Phone 3. On January 12, 2023, T-Mobile returned requested subpoena information for subscriber information associated with the **Target Cell Phone**, which information lists the customer name as Supply And Demand Group and accompanying subscriber name as Joathan COLULA Supply And Demand Group at 2398 Woods Ave., Monterey Park, CA 91754. This is the same name and address as the subscriber of Prior Cell Phone 3. Law enforcement authorities believe that COLULA is currently operating the **Target Cell Phone**.

22

49.     COLULA has been aware since November 29, 2022, of the existence of the federal warrant for his arrest. It is believed COLULA continues to intentionally evade law enforcement.

**CONCLUSION**

50.     COLULA operates the **Target Cell Phone**. The location data associated with the **Target Cell Phone** will assist law enforcement in conducting targeted physical surveillance to locate and arrest COLULA.

59.     Case agents searched law enforcement databases to confirm that the **Target Cell Phone** is currently being serviced by T-Mobile.

60.     Case agents are requesting this warrant authorizing the initial collection of data related to the **Target Cell Phone** for **30** days to further investigate COLULA's activities, and to identify locations to which COLULA is traveling and/or residing to successfully arrest COLULA.  I further submit that probable cause exists to believe that obtaining the location information of the **Target Cell Phone** will assist case agents in locating COLULA to execute the federal arrest warrant.

61.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from

the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

62.     Based on my training and experience, I know that T-Mobile can also collect timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

**Cell-Site Data**

63.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

24

64.     Based on my training and experience, I know that T-Mobile also can collect per-call measurement data, which T-Mobile also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

### E-911 Phase II / GPS Location Data

65.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to

25

determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

## Subscriber Information

66.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

67.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

68.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

69.	I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

70.	I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **60 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to change patterns of behavior and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or

27

any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

71.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Case 2:23-mj-00835-NJ   Filed 01/18/23   Page 35 of 42   Document 1

## ATTACHMENT A

### Property to Be Searched

1.     Records and information associated with the cellular device assigned call number **(213) 886-0344** (referred to herein and in Attachment B as "**Target Cell Phone**"), subscribed to Joathan COLULA Supply And Demand Group at 2398 Woods Avenue, Monterey Park, CA, that is in the custody or control of T-Mobile, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.     The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period January 7, 2023, to the present:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.     All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period January 7, 2023, to the present including:

a.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

b.  information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.    Information associated with each communication to and from the Target Cell Phone for a period of **30** days from the date of this warrant, including:

i.    Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.   Source and destination telephone numbers;

iii.  Date, time, and duration of communication; and

iv.   All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT,

2

True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

   i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

   ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.  Information to be Seized by the Government

All information described above in Section I that will assist in arresting Joathan COLULA, who was charged with violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 1956(h) and 2(a). COLULA is the subject of arrest warrants issued on November 23, 2022, and December 13, 2022, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

3

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, ________________________________, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by T-Mobile, and my title is ____________________________. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of T-Mobile. The attached records consist of

_________________________.

I further state that:

a. All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of T-Mobile and they were made by Verizon as a regular practice; and

b. Such records were generated by T-Mobile's electronic process or system that produces an accurate result, to wit:

1. The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of T-Mobile in a manner to ensure that they are true duplicates of the original records; and

2.      The process or system is regularly verified by T-Mobile and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature

3